O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL L. HAGGERTY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-01-2990 |
| | § | |
| TEXAS SOUTHERN UNIVERSITY | § | |
| and W. WILLIAMS, Individually, | § | |
| and in his capacity as a Texas | § | |
| Southern University Campus | § | |
| Police Officer, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Defendant Willie Williams's Supplemental Motion for Summary Judgment (Document No. 69). After having carefully reviewed the motion, response, and applicable law, the Court concludes that the motion should be granted.

I. Background

The background for this suit and identities of the parties may be found in the Court's Memorandum and Order entered March 17, 2003 (Document No. 39) and the opinion of the United States Court of Appeals for the Fifth Circuit issued November 18, 2004. *See* Haggerty v. Tex. S. Univ., 391 F.3d 653 (5th Cir. 2004). That decision of the Fifth Circuit establishes the law of this case on all issues except for one remaining claim: Plaintiff Michael Haggerty's ("Haggerty") excessive force claim against Defendant

Willie Williams ("Williams") under 42 U.S.C. § 1983.  Upon remand from the Fifth Circuit, Williams filed a Supplemental Motion for Summary Judgment seeking dismissal of the excessive force claim on qualified immunity grounds.  After additional briefing by the parties, the motion is now ripe for consideration.

## II.  Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  *See* id. at 2553-54.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  *See* Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)).  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

2

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *See* Anderson, 106 S. Ct. at 2513-14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. (citing Anderson, 106 S. Ct. at 2511). Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III. Discussion

A. Qualified Immunity

Williams argues that he is entitled to qualified immunity on Haggerty's § 1983 claim against him in his individual capacity. "Qualified immunity protects government officials who perform discretionary functions from liability 'unless their conduct violates clearly established statutory or constitutional rights of

which a reasonable person would have known.'" <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 312 (5th Cir. 2001) (quoting <u>Gibson v. Rich</u>, 44 F.3d 274, 276 (5th Cir. 1995). In determining whether an officer is entitled to qualified immunity, a court must first "consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right." <u>Price v. Roark</u>, 256 F.3d 364, 369 (5th Cir. 2001). If the plaintiff's allegations could make out a constitutional violation, the court must determine whether the officer's conduct was objectively reasonable in light of clearly established law at the time that the challenged conduct occurred--that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Haggerty</u>, 391 F.3d at 655 (citations omitted); <u>Glenn</u>, 242 F.3d at 312. "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." <u>Haggerty</u>, 391 F.3d at 655 (quoting <u>Southard v. Tex. Bd. of Criminal Justice</u>, 114 F.3d 539, 550 (5th Cir. 1997)).

B.   <u>Excessive Force</u>

Haggerty alleges that Williams violated his right to be free from excessive force. To prevail on an excessive force claim, a

4

plaintiff must show that an injury resulted directly and only from a use of objectively unreasonable force that was clearly excessive to the need.  Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir. 2005).  It is uncontroverted that Officers Walter Graves ("Graves"), James G. Howard ("Howard") and Bart Steinberg ("Steinberg") participated in Haggerty's arrest--not Williams.[1]  Haggerty alleges that he was "brutalized" by his arresting officers through their acts of "kicking, punching, throwing, pushing, dragging and handcuffing Plaintiff through the [student] center."  Document No. 1 ¶ 21.  Haggerty states in his affidavit that the officers tackled him and "began to wrestle with me," attempting to throw his arms behind his back, and that the officers later "continued to wrestle with me."  See Document No. 70 ex. E.  A third party witness for Haggerty corroborated that he saw the police officers "grab and start to wrestle" with Haggerty and, again, that he saw the "officers wrestling" with Haggerty.[2]  Id. ex. D.  There is no dispute that Williams never used any force on Haggerty, as Williams was otherwise engaged in removing Kendrick Randolph ("Randolph")--"an out-of-control victim/witness/suspect"--

---

[1] Haggerty did not name officers Graves, Howard, and Steinberg as Defendants for their having allegedly used excessive force on him until after the statute of limitations barred such an action.

[2] Haggerty states that he was not resisting, but does not explain how the officers could wrestle with a person who is compliant, who does not resist, who of his own volition places his arms behind his back to be handcuffed, and who provides no counter object with whom to struggle or wrestle.

from the scene at the time of Haggerty's arrest.  Haggerty, 391 F.3d at 657.

The Fifth Circuit has held that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."  Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995).  *See also* Thompson v. Boggs, 33 F.3d 847, 857 (7th Cir. 1994) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance.") (quoting Gaudreault v. Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990), *cert. denied*, 111 S. Ct. 2266 (1991)).  The officer must have had a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it in order for the duty to intervene to arise.  *See* Hale, 45 F.3d at 919; Nowell v. Acadian Ambulance Serv., 147 F. Supp. 2d 495, 507 (W.D. La. 2001).

The parties dispute whether Williams was in a position to witness Officers Graves, Howard, and Steinberg allegedly using excessive force against Haggerty.[3]  On this motion, however, the

---

[3] In his affidavit, Williams states that he did not witness the arrest of Haggerty. *See* Document No. 69 ex. C.  Rather, upon ordering the arrest of Haggerty, Williams avers that he "turned away from [the arresting officers] and began escorting Mr. Randolph from the scene and out the door [of the TSU student center] toward [Williams's] patrol car."  Id.  As he was walking out the door, Williams states, he "glanced back briefly and saw Officers Graves and Howard struggling to arrest Haggerty," who was "kicking his

6

Court must view the evidence in the light most favorable to Haggerty. When the arresting officers were allegedly using excessive force against Haggerty, Williams and the handcuffed Randolph, who was in Williams's sole custody, were within sight of Haggerty. Haggerty states that he came no closer than 10 to 15 feet from Williams before his arrest was ordered, which would indicate that Williams was several yards away. Williams explains that he "would have had to let [Randolph] go to aid in the arrest of Haggerty." Document No. 69 ex. C. Haggerty claims that Williams should have let Randolph go, based on Haggerty's own conclusory opinions that Randolph "was in no danger from anybody" and "most certainly couldn't and wouldn't have left handcuffed to pick a fight with anyone if . . . Williams had left him." *See* Document No. 70 ex. E. Williams, however, was responsible for the

---

feet at the officers and appeared to be trying to get away from the officers." Id. It did not appear to Williams that the arresting officers "were using force which was inappropriate under the circumstances." Id.

    According to Haggerty, however, Williams did not immediately leave the scene. In his affidavit, Haggerty avers that while he was allegedly being brutalized by the arresting officers, he "glanced over and saw on more than one occasion [Williams] still standing with the handcuffed [Randolph]." *See* Document No. 70 ex. E. Haggerty further avers that "as the [arresting officers] pulled [him] up," and after they "roughly flipped [him] onto [his] stomach," Haggerty "saw that [Williams] was still standing there with the handcuffed [Randolph]." Id. A bystander witness, Michael Taylor ("Taylor"), agrees that Williams did not immediately escort Randolph to the patrol car but rather remained inside the student center with Randolph for at least some period while the arresting officers were "wrestling with" Haggerty. *See* id. exs. D; D-2 at 0011; D-3 at 36-37.

7

safety of Randolph, who was in his custody, and states that he "did not want [] Randolph to encounter the people he had fought with earlier." *See* Document No. 69 ex. C. Moreover, it was Williams's judgment that if he let Randolph go, "that would have allowed him to seek out a fight[,] which is why he was originally detained." Id. In sum, faced with "an out-of-control victim/witness/suspect (Randolph)," "a nearby group of some eight alleged attackers," and "a gathering crowd," *see* Haggerty, 391 F.3d at 657, Williams stayed with the handcuffed Randolph and at least at some point escorted him to the patrol car "until the situation was under control." *See* Document No. 69 ex. C.

Assuming that Williams, with Randolph in his custody, was close enough to Haggerty to observe the encounter between Haggerty and the arresting officers, as Haggerty says he was, the Court concludes that under the totality of the circumstances no reasonable jury could find that Williams had a reasonable or realistic opportunity to intervene in Haggerty's arrest. Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998) is closely analogous:

> [T]his is not a case in which an officer is alleged to have stood idly by while a fellow officer mistreated [plaintiff]. Rather, all of the abuse allegedly suffered by [plaintiff] occurred while Johnston was attempting to restrain and arrest Wesley. Without some precedent holding that an officer has a duty to abandon his attempt to arrest one armed attacker in order to protect another armed attacker against whom other officers may be using excessive force, Johnston had discretion to decide

> whether Wesley or the officers arresting [plaintiff] deserved his immediate attention. . . .
>
> Johnston had little choice but to remain with Wesley while he and his fellow officers brought Wesley under control and secured him in Johnston's vehicle.  Under these circumstances, we believe that no reasonable juror could find Johnston was "in a position to intervene."

See also Riley v. Newton, 94 F.3d 632, 635 (11th Cir. 1996) (holding that an officer who was engaged in arresting a suspect, and who saw his fellow officer struggling with a second suspect on the opposite side of a truck but observed no use of excessive force, had no reasonable opportunity to protect second suspect and therefore no duty to intervene).  In this case as well, Williams had just effected the arrest of Randolph, who was handcuffed, and Williams was responsible not only to restrain Randolph from reentering the fray but also to protect him from being injured by the original alleged attackers or others in the gathering crowd.  In other words, Williams was not an idle bystander who was free to intervene in Haggerty's arrest.  Moreover, Haggerty himself describes a struggle in connection with his arrest--claiming the officers tackled him and that they wrestled *with* him.

Considering the facts alleged and summary judgment evidence viewed in the light most favorable to Haggerty, and even assuming that the claims of Haggerty are sufficient to make out a constitutional violation of excessive force by the arresting officers, the question then must be asked whether Williams's own

9

conduct was unlawful in the situation he confronted.  Williams himself employed no force on Haggerty and, at most, viewed from some distance of several yards away the struggle of three officers wrestling with and attempting to effect the arrest and handcuffing of Haggerty.  Williams's primary charge at this time was his own arrestee, handcuffed and in his physical custody, in a setting high with tension, prior fights, and a gathering crowd.  In this fluid setting with the rush of activity that competed for Officer Williams's attention, it is not evident that a reasonable officer in Williams's position at the time would have perceived that excessive force was being exerted on Haggerty in the struggle to subdue and arrest him.

Give the totality of the circumstances, including also the outcries of Haggerty that he was being hurt and that he had a bad back and neck, Haggerty has not presented evidence that it would be clear to a reasonable officer in Williams's position that his own conduct was unlawful if he did not intervene in the effort to arrest Haggerty by commanding the other three officers to desist in the force they were employing or by leaving his own handcuffed arrestee and effecting Haggerty's arrest himself.  Even if reasonable officers were to differ on the lawfulness of Williams's conduct under these total circumstances, that would not be sufficient to overcome Williams's qualified immunity.

Finally, the Court concludes that it would not have been clear to a reasonable officer in Williams's position that it would be unlawful for him to escort the handcuffed person in his custody to the patrol car instead of assisting in Haggerty's arrest. Because there is no evidence that Williams had a reasonable or realistic opportunity to prevent the alleged excessive force attack on Haggerty, Williams is entitled to qualified immunity on the excessive force claim.

## IV. Order

Accordingly, it is

ORDERED that Defendant Willie Williams's Supplemental Motion for Summary Judgment (Document No. 69) is GRANTED, and Plaintiff Michael Haggerty's § 1983 claim against Williams for excessive force is DISMISSED.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 22nd day of August, 2005.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE